STATE OF CONNECTICUT v. SHEILA HUDSON
(5491)

BORDEN, O'CONNELL and STOUGHTON, Js.

Argued January 7—decision released May 24, 1988

*Jean Elmblad Blue,* special public defender, for the appellant (defendant).

*James A. Killen,* deputy assistant state's attorney, with whom, on the brief, was *Eugene Callahan,* state's attorney, for the appellee (state).

O'CONNELL, J. The defendant appeals from the judgment of conviction of larceny in the second degree in violation of General Statutes § 53a-123 (a) (3) and assault in the second degree in violation of General Statutes §§ 53a-8 and 53a-60 (a) (2). The defendant claims that the trial court erred (1) in charging the jury on larceny in the second degree as a lesser included offense of robbery in the first degree, (2) in giving an adverse inference instruction regarding the defendant's failure to call an alibi witness, (3) in admitting evidence of the victim's photographic identification of the defendant as one of her assailants, and (4) in denying the defendant's motion for a mistrial. We find error in part.

The defendant and her brother, Brian Hudson, were tried together for the January 12, 1985 robbery and assault of Sandra Gilbane. See *State* v. *Hudson,* 14 Conn. App. 463, 541 A.2d 534 (1988). The jury reasonably could have found the following facts: Shortly after 8 p.m. on January 12, 1985, the victim was assaulted by a black woman and a black man as she attempted to enter her automobile outside an office building in

Stamford. The woman attempted to remove the victim's purse from her shoulder, and, when she resisted, the man struck her on the head with what appeared to her to be a revolver. Although the victim did not positively identify her assailants from police photographs viewed the night of the assault, she did identify both the defendant and Brian Hudson after viewing additional photographs one week later. A more detailed discussion of the pertinent facts is contained in *State* v. *Hudson,* supra, 464–65.

## I

The defendant first claims error in the trial court's instruction to the jury on the lesser included offense of larceny in the second degree.

The defendant went to trial on a substitute information charging, inter alia, robbery in the first degree in violation of General Statutes § 53a-134 (a) (4).[1] Due to the insufficiency of evidence regarding the presence of a deadly weapon, the court directed the jury to find the defendant not guilty of robbery in the first degree, and granted the state's request to instruct the jury on larceny in the second degree under General Statutes § 53a-123 (a) (3). Section 53a-123 provides in pertinent part: "(a) A person is guilty of larceny in the second degree when he commits larceny as defined in section 53a-119;[2] and: . . . (3) the property, regardless of its

[1] The defendant was originally charged with robbery in the first degree, General Statutes § 53a-134, and larceny in the second degree, General Statutes § 53a-123. The state then amended that information to charge robbery in the first degree, General Statutes § 53a-134 (a) (4), and assault in the second degree, General Statutes § 53a-60 (a) (2). A subsequent information was filed which charged the defendant with the crimes he faced at trial, namely robbery in the first degree, General Statutes § 53a-134 (a) (4), and assault in the second degree, General Statutes §§ 53a-8 and 53a-60 (a) (2).

[2] General Statutes § 53a-119 provides in pertinent part that "[a] person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner."

nature or value, is taken from the person of another." (Footnote added.) The defendant objected to the state's request on the grounds that she had not been put on notice that she would be exposed to a possible conviction of larceny in the second degree. The court overruled the defendant's objection, and the defendant excepted. We agree with the defendant.

"In *State* v. *Whistnant*, 179 Conn. 576, 427 A.2d 414 (1980), the court set out four conditions which must be met before a party is entitled to an instruction on a lesser included offense: '(1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser.' Id., 588. (Footnote omitted.) In this case, it is the second *Whistnant* criterion with which we are concerned." *State* v. *Kitt*, 8 Conn. App. 478, 486–87, 513 A.2d 731 (1986), cert. denied, 202 Conn. 801, 518 A.2d 648 (1987), see also *State* v. *Gonzalez*, 14 Conn. App. 216, 221, 541 A.2d 115 (1988).[3] Simply stated, the

---

[3] We note that although the defendant's trial counsel argued that the fourth, rather than the second criterion of the *Whistnant* analysis had not been met, the defendant's appellate counsel contends that such argument was the result of confusion concerning the analysis. The state concedes that the defendant's appellate argument regarding the second criterion of the *Whistnant* analysis is reviewable, citing *State* v. *Kristy*, 11 Conn. App. 473, 481, 528 A.2d 390 (1987), cert. denied, 206 Conn. 801, 535 A.2d 1315 (1988). We agree with the parties that such a claim would be reviewable, both in light of the defendant's objection and exception, and in the absence of a proper exception, under the *Evans* doctrine as noted in *State* v. *Kristy*, supra.

issue is whether the defendant was given notice of the charge of larceny in the second degree by the information which charged her with robbery in the first degree.

When examining a claim of insufficient notice of a lesser included offense, we are limited to an examination of the charging documents, and do not examine the evidence presented at trial. *State* v. *Jacobowitz,* 182 Conn. 585, 593, 438 A.2d 792 (1981); *State* v. *Kitt,* supra, 487. The substitute information on which the defendant went to trial stated in pertinent part that "on or about the twelfth day of January 1985, at or about 8:25 p.m. at premises known as # 25 Third Street, the said SHEILA HUDSON *stole certain property from one SANDRA GILBANE,* to wit: current monies of the United States of America, and in the course of the commission of the crime, displayed and threatened the use of what she represented by her words or conduct to be a firearm, in violation of § 53a-134 (a) (4) of the Connecticut General Statutes." (Emphasis added.) We must determine if it would be possible to "[steal] certain property from [a victim]," without taking property from "the person of [the victim]."

The defendant's claim is foreclosed by *In re Juvenile Appeal (84-4),* 1 Conn. App. 642, 474 A.2d 485 (1984), and *State* v. *DeMatteo,* 13 Conn. App. 596, 538 A.2d 1068 (1988). In those cases, we held that, because larceny from the person requires a taking from the victim's person as opposed to a taking from his presence or control, larceny in the second degree under § 53a-123 (a) (3) is not ordinarily a lesser included offense of robbery, the larceny component of which does not require such a taking.

For example, this court held in *In re Juvenile Appeal (84-4)* that the trial court erred in concluding that a respondent who had removed a victim's radio from the victim's presence, while an accomplice held a knife to the

victim's throat, had committed larceny in the second degree pursuant to General Statutes § 53-123 (a) (3). " 'In [the] view [of our Supreme Court], larceny from the person *requires an actual trespass to the person of the victim.* . . . On the other hand, the removal of property from the presence or control of the victim lacks such a trespass and is insufficient to constitute larceny from the person. . . . [L]arceny from the person is a separate and distinct offense from that of simple larceny.' " (Emphasis in original.) *In re Juvenile Appeal (84-4),* supra 645, quoting *State* v. *Crowe,* 174 Conn. 129, 134, 384 A.2d 340 (1977).

Contrary to the state's argument, the use of the term "stole" in the information does not supply the defendant with sufficient notice of the "separate and distinct offense" of "taking property from the person" of the victim. One can easily envision countless scenarios in which the defendant "steals" property from the victim as described in this particular information, without actually removing it from the victim's person.[4] Indeed, we have held that the word "steal" means "to commit larceny." *Lauder* v. *Peck,* 11 Conn. App. 161, 165, 526 A.2d 539 (1987). We conclude that the information did not put the defendant on notice of the second degree larceny charge and, therefore, it was error to instruct the jury on larceny in the second degree.

## II

The defendant next claims that the trial court erred in instructing the jury that it could draw an adverse

---

[4] For example, the defendant could force the victim to allow the defendant access to the victim's bank account by requiring the victim to open her account through an automatic bank teller machine. If the defendant then proceeded to withdraw monies from the victim's account, the defendant would thereby "steal" money from the victim without committing larceny in the second degree. Further, any scenario in which a defendant would remove property from the presence or control of the victim without committing a physical trespass, could satisfy the language of the information, without constituting a "taking from the person."

inference from the defendant's failure to call an alibi witness. *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 675, 165 A.2d 598 (1960). We disagree.

The defendant claimed as an alibi defense that on the night of the crime she was with her sister, Jackie Hudson, visiting Everett Hodge, a family friend. Hodge testified on the defendant's behalf, but the defendant failed to call Jackie Hudson to testify.

A party is entitled to a so-called "*Secondino* instruction," whenever it is shown that a witness is available, and is a witness whom the party in question would naturally produce. *State* v. *Hudson,* supra, 468; *State* v. *Howard,* 12 Conn. App. 655, 657, 533 A.2d 890 (1987). Because the state satisfied its burden of proving both prerequisites, the *Secondino* instruction was properly given.

The record indicates that prior to the commencement of the trial defense counsel was cognizant of Jackie Hudson's whereabouts. The following brief colloquy indicates that the witness at issue was in fact available:

"[Defense Counsel]: Your Honor, I spoke with [the defendant] this morning and there is a possibility that her sister, Jackie Hudson, may be called as a witness. I'd ask Your Honor please if you would mention that to the jury.

"The Court: Are there any other witnesses that the court should mention? We have Jackie Hudson and Jackie Hudson's address is?

"[Defense Counsel]: She's from Stamford, Your Honor, Hope Street."

The record also indicates that the defendant's mother, Pearl Hudson, testified that she knew the telephone number and address of Jackie Hudson's employer, as of July 31, 1985, only two days before she

appeared in court to testify. Further, there was no testimony presented by the defendant that the number had changed or that the defendant's mother was unwilling to give it to the defendant, if requested. The trial court appropriately concluded that there was sufficient evidence from which the jury reasonably could find that the witness was available. See *State* v. *Hudson,* supra, 469–70; *State* v. *Watley,* 195 Conn. 485, 489, 488 A.2d 1245 (1985).

The record also shows that Jackie Hudson was the only person claimed to be present with the defendant between 7:30 and 10 p.m. on the night of the assault. Such a critical witness would be one naturally produced to support the alibi testimony. The defendant's arguments that Jackie Hudson was an "inferior" witness, because her credibility as the defendant's sister could be questioned, and because her testimony would be "cumulative," is without merit. "The testimony of an additional witness upon a significant disputed issue can hardly be characterized as cumulative. *State* v. *Reid,* 193 Conn. 646, 662, 480 A.2d 463 (1984). . . . Though each party is ordinarily empowered to place an available witness on the stand, such a witness often may be expected to furnish testimony more favorable to one side than the other. . . . We do not equate the requirement that the witness be one whom a party would *naturally* produce with the judgment of counsel that the witness would be effective." (Emphasis in original; citation omitted.) *State* v. *Ruiz,* 202 Conn. 316, 325, 521 A.2d 1025 (1987). We conclude that the trial court did not err in giving the *Secondino* instruction.[5]

---

[5] The defendant also alleged that the *Secondino* instruction impermissibly shifted the burden of proof in violation of the defendant's due process rights under the federal constitution. We addressed this claim thoroughly in *State* v. *Hudson,* 14 Conn. App. 463, 470–71, 541 A.2d 534 (1988) and, as the defendant in that case relied upon this defendant's brief for his argument, we conclude that our discussion in that case necessarily resolves any claims raised in the present appeal with regard to this issue.

## III

The defendant's third claim of error is that evidence of the photographic identification of the defendant made by the victim should have been suppressed. We disagree.

" 'The trial court held an evidentiary hearing regarding the identifications and specifically found that none of them was the result of an impermissibly suggestive procedure, and that they were reliable. See, e.g., *State v. Vilhotti,* 11 Conn. App. 709, 713–18, 529 A.2d 235 (1987). It would serve no useful purpose to recite those findings here. We have fully reviewed the record, and we conclude that those findings are amply supported by the evidence. *State v. Mitchell,* 204 Conn. 187, 203, 527 A.2d 1168, cert. denied, U.S. , 108 S. Ct. 293, 98 L. Ed. 2d 252 (1987).' *State v. Daniels,* 13 Conn. App. 133, 135, 534 A.2d 1253 (1987)." *State v. Hudson,* supra, 466.

## IV

The defendant's final claim of error alleges that the trial court impermissibly requested that the jury "observe everyone in the courtroom," immediately after an in-court identification of the defendant and her codefendant had occurred. We find no abuse of the trial court's discretion in the manner in which it conducted this identification procedure, and conclude that our ruling on the identical claim made by Brian Hudson, the codefendant in this case, is dispositive of this matter. See *State v. Hudson,* supra, 466–67.

There is error in part, the judgment is set aside as to the conviction of larceny in the second degree only and the case is remanded with direction to render judgment of not guilty on the first count of the substitute information.

In this opinion the other judges concurred.